# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAIN GILLETTE, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>FIRST PREMIER BANK,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 3:13-CV-432-LAB-RBB<br><br>**ORDER COMPELLING ARBITRATION** |

Gillette alleges that First Premier Bank recorded debt collection calls it placed to him without his knowledge or consent, in violation of California Penal Code § 632.7. Now pending is First Premier's motion to compel arbitration.

## I.　Factual Background

Most of the relevant facts here aren't in dispute. Gillette filled out an online application for a First Premier credit card in December 2010. His application certified that he read, met, understood, and accepted all terms, one of which was an "Arbitration Notice." It said:

> If you are issued a credit Card, your Credit Card Contract will contain a binding Arbitration Provision. In the event of any dispute relating to your Credit Card Contract, the dispute will be resolved by binding arbitration pursuant to the rules of the American Arbitration Association or an arbitration organization mutually agreed upon by the parties. Both you and we agree to waive the right to go to court or to have the dispute heard by a

- 1 -

>jury (except in regard to any collection activities on your Credit Account). You and we will be waiving any right to a jury trial and you also would not have the right to participate as part of a class of claimants relating to any dispute with us. Other rights available to you in court may also be unavailable in arbitration. When you receive your Credit Card Contract, you should read the Arbitration Provision in your agreement carefully and not accept or use the Card unless you agree to bound by the Arbitration Provision.

(Doc. No. 9-3 at 6, 10.) First Premier approved Gillette's application and opened a credit card account for him on December 19, 2010, and then promptly sent him a credit card and credit card contract. That contract contained a very comprehensive "Arbitration and Litigation" section spelling out the range of disputes Gillette was agreeing to arbitrate and the conditions of any such arbitration. (Doc. No. 9-4.) Right up front in that section was a notice to Gillette that he could opt out it (which he did not do), as well as an all-caps suggestion to read the section very carefully.

In July 2012, Gillette sued First Premier in Superior Court in Los Angeles for violations of the Rosenthal Fair Debt Collection Practices Act. (Doc. No. 11-2.) This case settled in April 2013 without First Premier making any arbitration demand under the credit card contract—presumably because it wasn't worth the trouble, or because the "Arbitration Notice" in the online application specified that disputes "in regard to any collection activities" aren't subject to binding arbitration.[1] The settlement agreement said it "constitutes the full and entire Agreement between the Settling Parties hereto with regard to the settlement of the Dispute and such Settling Parties acknowledge that there is no other agreement, oral and/or written, between the Settling Parties hereto with regard to the settlement of the Dispute." (Doc. No. 11-3 at ¶ 4.1.)

It was after Gillette sued First Premier in Superior Court, but before that case settled, that he sued First Premier in this Court for recording its debt collection calls without his consent.

---

[1] The Court doesn't see any reiteration of this in the credit card contract. The closest term it identifies in the contract says "Binding arbitration shall not be required, however, for collection actions by us relating to your Credit Account," which obviously speaks only to actions brought by First Premier.

## II. Scope of the Court's Analysis

The parties agree that the Court should determine whether, in the first instance, a binding arbitration agreement exists. They disagree, though, on who should determine whether that agreement—assuming there is one—is valid, and whether it encompasses the present dispute. Gillette says the Court should make those determination; First Premier says the arbitrator should make them.

As a general rule, Gillette is right. The Ninth Circuit has recognized that a court's role under the Federal Arbitration Act is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). But what Gillette misses is that these questions can themselves be delegated to an arbitrator in an arbitration agreement. In other words, parties can agree to arbitrate arbitrability. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). There simply must be clear and unmistakable evidence that they made this agreement. *See id.* at 2778 n. 1; *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 Fed.Appx. 630, 632 (9th Cir. 2011) ("The language of an arbitration agreement establishes whether the determination of arbitrability is for the court or delegated to an arbitrator."); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) ("We hold that this language, delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration cause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'" (*quoting Rent-A-Center*, 130 S.Ct. at 2777).).

Under the "Arbitration and Litigation" section of the credit card contract, in a subsection titled "Parties and Matters Subject to Litigation," a "claim" that's subject to arbitration is defined to include "claims regarding the applicability, enforceability or validity of this [Arbitration] Provision." That language couldn't be more clear: Gillette and First Premier agreed to arbitrate arbitrability. They agreed to arbitrate the question whether the

arbitration agreement is valid, and they agreed to arbitrate whether it encompasses the present lawsuit.

### III. Discussion

Given the parties' agreement to arbitrate gateway issues of arbitrability, there is actually very little here for the Court to decide. There's simply no disputing that the credit card application Gillette filled out, as well as the subsequent credit card contract, contain an agreement to arbitrate. This being the case, the Court's work is more or less done, although, as First Premier points out, two questions remain. The first is whether the settlement agreement in the Superior Court case displaced, or novated, the credit card contract and its arbitration provision. Frankly, the Court doesn't see why this isn't also a gateway question of arbitrability, but it will address it anyway. The second question is whether a class arbitration waiver in the credit card contract is enforceable. This question doesn't go to the arbitrator because the contract explicitly excludes it: "However, only a court of law, not an arbitrator, shall determine the validity and effect of this Provision's prohibition of class arbitration." (Doc. No. 9-4.)

### A. Novation

Gillette wants to argue that the settlement agreement from his Superior Court action for violations of the Rosenthal Fair Debt Collection Practices Act novated the credit card contract and is now the only binding contract the parties have. The Court agrees with First Premier that this is a specious argument. Actually, that's a generous description.

A novation "is the substitution of a new obligation for an existing one." Cal. Civ. Code § 1530. The parties' intent to make this substitution is paramount, and it must be clear. *Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1081–82 (9th Cir. 2005). This is all the law the Court needs, really, to reject Gillette's novation claim. By its own terms, as First Premier points out, the settlement agreement is limited to the actual dispute over Gillette's credit card debt and First Premier's allegedly harassing collection practices *in the Superior Court case*, which is obviously not the dispute in this case: "This Agreement is executed by the Settling Parties for the sole purpose of compromising and settling the claims

in issue in the Dispute." (Doc. No. 11-3 at ¶ 3.0.) Even those portions of the settlement agreement that Gillette relies on cut against its argument. For example, the settlement agreement also says, "This Agreement constitutes the full and entire Agreement between the Settling Parties hereto with regard to the settlement of the Dispute and such Settling Parties acknowledge that there is no other agreement, oral and/or written, between the Settling Parties hereto with regard to the settlement of the Dispute." (Doc. No. 11-3 at ¶ 4.1.) There again, it's plain that the settlement agreement concerns only the particular dispute being settled, and in no conceivable way can or should be read to replace the credit card contract as the operative contract between the parties.

Gillette also throws out the argument that because First Premier didn't try to force arbitration of the Superior Court case, it has waived its right to invoke the arbitration provision of the credit card contract in this case. This is also a specious argument. Perhaps, to the extent First Premier intended to settle with Gillette at the outset of the Superior Court case, it simply made no economic sense to pursue arbitration. But regardless of First Premier's reason for staying in court previously, it still retains the right to pursue arbitration now. *See Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1113 (C.D. Cal. 2002) ("In addition, to hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd.").

**B.     Class Arbitration**

Gillette argues that the class arbitration waiver in the credit card contract is substantively and procedurally unconscionable—although his actual argument focuses exclusively on *substantive* unconscionability. Obviously, the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) makes that an uphill argument. *Concepcion* held that the Federal Arbitration Act preempted a rule in California classifying most collective-arbitration waivers in consumer contracts as unconscionable. The Ninth Circuit has subsequently shown a faithful and strict adherence to *Concepcion*. *See Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012).

//

Gillette tries to get around *Concepcion* by, first, citing the dissent in the case, and second, by citing two post-*Concepcion* cases in which courts held that class arbitration waivers were unconscionable for depriving putative class members of any opportunity to vindicate their legal rights. The first case is *Chavez v. Bank of America*, 2011 WL 4712204 (N.D. Cal. Oct. 7, 2011). The second is *In re American Express Merchants' Litig.*, 667 F.3d 204 (2d Cir. 2012).

First case first, in *Chavez* the court actually found only the *forum selection clause* of an arbitration agreement to be unconscionable, on the ground that plaintiffs were required to travel to Washington, D.C. to litigate a claim worth "a couple of hundred dollars." 2011 WL 4712204 at *11. That concern isn't implicated in this case, because the credit card contract specifies that "[a]ny arbitration hearing at which you wish to appear will take place at a location within the federal judicial district that includes your [Gillette's] billing address at the time the Claim is filed." (Doc. No. 9-4.)

As for the Second Circuit's decision in *American Express*, Gillette is right. The court did hold, post-*Concepcion*, that a class action waiver is unenforceable when, in effect, it bars plaintiffs from vindicating their statutory rights. 667 F.3d at 217 ("The evidence presented by plaintiffs here establishes, as a matter of law, that the cost of plaintiffs' individually arbitrating their dispute with AMEX would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws."). The problem is that the Ninth Circuit, in *Coneff*, explicitly disagreed with *American Express* and sided with an Eleventh Circuit case to the contrary.[2] *Coneff*, 673 F.3d at 1159 n. 3 (citing *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011). Indeed, the Ninth Circuit held in *Coneff* that "policy concerns, however worthwhile, cannot undermine the FAA." *Id.* at 1159. The bottom line here is that Gillette advances an interpretation or reading of *Concepcion* that is contradicted by binding Ninth Circuit authority. *See also Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418 at *7 (C.D. Cal. Feb. 5, 2013) (citing *Coneff* and holding that "the Arbitration Agreement is

---

[2] Even worse for Gillette, *American Express*, on the day of this writing, was reversed by the Supreme Court. *See American Express Co. v. Italian Colors Restaurant*, Case No. 12-133, available at http://www.supremecourt.gov/opinions/12pdf/12-133_19m1.pdf.

enforceable in spite of Plaintiff's claim that he cannot vindicate his statutory rights if compelled to arbitrate his claims individually"). The Court simply has no basis for concluding that the class arbitration waiver is unconscionable.

### III. Conclusion

The Court makes two findings above. First, the credit card contract does contain an agreement to arbitrate claims, and that contract was not novated by a settlement agreement that the parties reached in an unrelated case. Second, the class arbitration waiver is not substantively unconscionable and does not render the credit card contract unenforceable; to the contrary, following *Concepcion* the waiver is enforceable. Together, these findings provide a basis for **GRANTING** First Premier's motion to compel arbitration in this case. It is therefore **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

DATED: June 20, 2013

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge